UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION



| | |
|---|---|
| MICHAEL B. FLANIGAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 09-cv-1179 |
| LIEUTENANT WALLACE et al., | ) |
| Defendants. | ) |

## OPINION AND ORDER

The plaintiff pursues excessive force and failure to protect claims against Defendant Wallace arising from events that occurred during the plaintiff's incarceration in federal prison in Pekin, Illinois. The plaintiff has since been transferred to a federal prison in Kentucky.

Defendant Wallace has moved for summary judgment, which, for the reasons below, will be granted.

### Procedural History

In May, 2009, while incarcerated in the federal prison in Pekin, the plaintiff filed letters in this district alleging vaguely that he had been assaulted by staff and that he feared for his life. One of his letters alleged that Lieutenant Wallace had slammed the plaintiff's arm in a cell door slot. Another letter asked for a transfer and alleged vaguely that the plaintiff had been assaulted five times during the prior four years. Yet another letter alleged that officials refused to take pictures of his arms to preserve evidence of the assault and also alleged that Lieutenant Wallace implied that the plaintiff was going to be "roughed up" when he came out of his cell.

A case was opened based on these letters, with Judge Harold A. Baker presiding. The plaintiff did not file a formal complaint in response to Judge Baker's order, so Judge Baker proceeded to conduct a merit review on the letters. On August 11, 2009, Judge Baker concluded that the letters stated arguable Eighth Amendment claims that: 1) Lieutenant Wallace used excessive force on the plaintiff; 2) Lieutenant Wallace failed and continued to fail to protect the plaintiff from a serious risk of attack; and 3) unknown officers failed and continued to fail to protect the plaintiff from a serious risk of attack. (d/e 11). Judge Baker also construed a claim against the warden in his official capacity for purposes of injunctive relief. During the pendency of this action, the plaintiff was transferred to a prison in Kentucky. In October, 2010, this case was transferred from Judge Baker to this Court, pursuant to Judge Baker's decision to no longer handle Peoria cases.

The plaintiff is no longer incarcerated in Pekin, so his claims for injunctive relief are moot. *See Pearson v. Welborn*, 471 F.3d 732, 743 (7th Cir. 2006)(prisoner's claim for injunctive relief to be transferred to different prison became moot upon transfer to a different prison); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996)("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'")(quoted cite omitted).

Thus, the only claim remaining is the excessive force and failure to protect claim against Defendant Wallace.[1] Wallace argues that no claims remain against him because the injunctive relief that the plaintiff seeks is moot and the plaintiff does not pursue damages. The plaintiff

---

[1] The plaintiff never identified any of the unknown officers.

responds that he seeks "damages" including his release from Pekin and the bringing of criminal charges against Wallace. (d/e 38, p. 1).[2] However, criminal charges and investigations are not something within the Court's authority to order. And, as already discussed, the plaintiff's request to be moved out of Pekin is moot. However, given the plaintiff's pro se status the Court believes that the merits of his claims should be addressed, even if he does not specifically ask for compensatory or punitive damages. The possibility of damages is fairly inferred from the nature of the allegations.

**Summary Judgment Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment must demonstrate that no genuine dispute of material fact exists for trial, which can be accomplished by showing that no evidence exists to support the plaintiff's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment bears the burden to respond by "set[ting] out specific facts showing a genuine issue for trial[,]" not by simply restating his allegations. *See* Fed. R. Civ. P. 56(e)(2). Material factual disputes are resolved in the nonmovant's favor at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "We do not judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter." *Gonzales v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009).

---

[2]The plaintiff also asserts that criminal charges should be brought against Defendant "Smith," but there is no Defendant Smith.

## Facts and Analysis

The plaintiff alleges in one of his letters that Wallace "slammed my arm in the tray slot, telling me that he was going to beat my ass." (d/e 8, p. 1). This alleged incident occurred on July 28, 2009, while the plaintiff was in his cell at Pekin. That day, Defendant Wallace wrote an incident report against the plaintiff, charging him with interfering with a security device and threatening another with bodily harm. (d/e 34-1, p. 27). The hearing officer on the ticket issued written findings that the plaintiff had:

> tied his jumpsuit around his food slot and refused to allow staff to secure the slot. Inmate Flanigan was given three direct orders to allow staff to secure the food slot and he refused. Inmate Flanigan stated to H. Wallace, Lieutenant, "bring your big ass in here and I will show you something." Inmate Flanigan then stated, You guys think my legs are fucked up but I will kick your ass." Inmate Flanigan was then informed to remove his hand from the slot and he stated, "Fuck you, I will kick your ass if you try to come."

(d/e 34-1, p. 27).[3] The plaintiff was found guilty and lost 21 days of good conduct time. According to the defendants' evidence, this punishment still stands. The plaintiff seems to contend that the report was expunged, but he offers no evidence to support that statement.

Since the plaintiff lost good time, he cannot challenge the factual basis for the guilty finding. This is because if he did not behave as stated in the report, then he should not have been found guilty and should not have lost good time. If he should not have lost good time, then he should be released sooner. Thus, a challenge to the truth of the factual findings is necessarily a challenge to the length of his sentence. This kind of challenge can be made in federal court only

---

[3]The plaintiff says that he was "just plac[ing] his arm out of the slot until someone in charge arrived that could assist him with his legal issues." (d/e 38, p. 2).

through a habeas corpus action, after exhausting available state remedies. *See DeWalt v. Carter*, 224 F.3d 607, 614 (7th Cir. 2000)(inmates "challeng[ing] the fact or duration of their confinement and seek[ing] immediate or speedier release" must pursue their challenges under the habeas statute); *Moran v. Sondalle*, 218 F.3d 647, 650 (7th Cir. 2000)( prisoners challenging the revocation of good time credits "must seek habeas corpus, because they contest the fact or duration of custody."). This rule "prevents prisoners from making an end-run around the need to challenge the validity or duration of their convictions using the vehicle of habeas corpus, rather than through an action under 42 U.S.C. § 1983 or Bivens." *Jogi v. Voges*, 480 F.3d 822, 835 (7th Cir. 2005), *citing Wilkinson v. Dotson*, 544 U.S. 74 (2005). The rule applies even though the plaintiff does not ask for restoration of his good time.

For purposes of this case, then, the plaintiff threatened Wallace with assault and refused several direct orders to allow the staff to close the food slot. This does not necessarily mean that no excessive force was used in closing the slot, but it is relevant to determining the amount of force reasonably necessary.

The plaintiff does not seem to directly dispute Wallace's affidavit that Wallace "gave [the plaintiff] several direct orders to remove his arm from the slot and attempted to push it out. When plaintiff resisted, I summoned the Captain, who persuaded plaintiff to withdraw his arm and allow us to secure the slot." (d/e 34-1, p. 30). No inference of excessive force arises from that description.

Additionally, Wallace has submitted under seal a surveillance video of the incident (d/e 46), but it is difficult to make out much. It does show Wallace (purportedly) walking up to a cell and standing in front of it. It shows some movement by Wallace in front of the cell—it is

difficult to see exactly what Wallace is doing, but it could be movement consistent with Wallace's attempts to push the plaintiff's arm back into the cell. It also shows three others arriving at the scene, one with what appears to be a video camera and another with a cart. After about 15 minutes, all four individuals walk calmly away from the door, with the cart and the camera, and with what appears to be an inmate jumpsuit.

The video certainly does not support any claim of excessive force. The four individuals are behaving calmly and slowly over the course of about 15 minutes. However, it is too difficult to see what everyone is doing to be conclusive evidence in Wallace's favor. *Compare with Scott v. Harris*, 550 U.S. 372, 378 (2007)(facts on summary judgment must be viewed in light of videotape that recorded incident); *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004)(acknowledging that video did not "capture every second" but was "fairly comprehensive" and showed only "incidental bumping" and the plaintiff not in apparent discomfort).

Nevertheless, even without the recording, the Court concludes that no rational juror could find in the plaintiff's favor. The Eighth Amendment hurdle is a high one. It prohibits the "'unnecessary and wanton infliction of pain.'" *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992)(quoted cite omitted). Excessive force is force applied "'maliciously and sadistically for the very purpose of causing harm,'" as opposed to force applied "'in a good-faith effort to maintain or restore discipline.'" *Hudson*, 503 U.S. at 5 (quoted cite omitted). Relevant factors include the need for force, the relationship between that need and the force applied, the threat reasonably perceived by the officers, the efforts made to temper the severity of the force employed, and the extent of the prisoner's injury. *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000), *citing Hudson*, 503 U.S. at 7. "[W]hile significant injury is not required, a claim

ordinarily cannot be predicated upon a de minimis use of force." *DeWalt*, 224 F.3d at 619; *see also Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001)(minor injury from guard shutting cuffport door on inmate's hand dismissed on summary judgment for guard).

Here, the plaintiff alleges in his letter that Wallace "slammed my arm in the tray slot, telling me that he was going to beat my ass." (d/e 8, p. 1). This conclusory description was enough to survive a motion to dismiss, but not to survive summary judgment. The plaintiff makes no attempt to describe the alleged excessive force in any detail. Some force would have been reasonably necessary to "restore discipline," given the plaintiff's belligerent refusal to remove his arm and his verbal threats. The plaintiff has no evidence whatsoever of any injuries he suffered, even *de minimis* injuries. *See Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009)("Even if an officer's use of force serves no good-faith disciplinary purpose, the force may be so 'de minimis' that it does not violate the Eighth Amendment."). "[T]he quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind.'" *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004), *quoting Hudson*, 503 U.S. at 10 (other cite omitted). There is no evidence that Wallace used force "repugnant to the conscience of mankind," if he in fact used any force at all. The record allows for no "'reliable inference of wantonness in the infliction of pain.'" *Id.* (quoted cite omitted).

In sum, the Court is cognizant that excessive force claims are typically not resolvable on summary judgment, but this is one case that is. *See, e.g., Outlaw*, 259 F.3d at 841 (upholding summary judgment on prisoner's excessive force claim); *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994)(same). Accordingly, summary judgment will be granted for Defendant Wallace on the excessive force claim.

As for the failure to protect claim, there is no evidence to support that claim. The plaintiff repeats his allegations that he was in a dangerous environment, but there is no evidence that he was at a substantial risk of serious harm, much less that Defendant Wallace (or anyone else) was deliberately indifferent to that risk. Accordingly, summary judgment is mandated on this claim as well. In light of these conclusions, the court need not address Wallace's other arguments for dismissal.

IT IS THEREFORE ORDERED THAT:

1) Defendant Wallace's motion for summary judgment is granted (d/e 33). The clerk of the court is directed to enter judgment in favor of Defendant Wallace and against the plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.

2) If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the appeal.

Entered this 8th day of December, 2010.

s/Joe B. McDade

_____
JOE BILLY MCDADE
Senior United States District Judge